Gasway *vs.* The Atlanta and West Point Railroad Company.

RICHARD C. GASWAY, plaintiff in error, *vs.* THE ATLANTA AND WEST POINT RAILROAD COMPANY, defendant in error.

1. Railroad companies are responsible to passengers for the torts of the conductors and other servants of the company employed in running trains, when such torts are committed in connection with the business entrusted to such servants and spring from or grow immediately out of such business.

2. If the tortious act of the servant or agent be such, when committed in the business of the company and within the scope of the servant's employment, as would have subjected the servant to exemplary or vindictive damages had he been sued as principal, the company will be responsible for like damages when it is sued for such misconduct of its servant in its business.

3. The liability of the company extends to tortious acts of its servants done about its business, in checking the baggage of passengers at the several stations on its line of road, and to the platform or area along the cars necessary to be used or traversed by the passengers in attending to procuring seats and checking baggage, and other lawful and peaceful acts in connection with their travel.

4. These principles are especially applicable where the servants of the company are retained after the torts, and thereby their acts are impliedly ratified by the higher agents of the corporation.

Railroads. Principal and Agent. Damages. Torts. Ratification. Before Judge BUCHANAN. Troup Superior Court. November Term, 1876.

Reported in the opinion.

BIGHAM & WHITAKER, for plaintiff in error.

A. W. HAMMOND & SON, for defendant.

·JACKSON, Judge.

Gasway sued the railroad company for damages on two counts: first, for the illegal and tortious conduct of the baggage-master, assisted by the conductor, when the plaintiff applied to have his baggage checked; and secondly, for the illegal and tortious conduct of the same conductor, some months afterwards, towards Gasway on the cars.

The first count was to the effect that the baggage-master beat and maltreated the plaintiff wrongfully while engaged in having the baggage of his wife checked; the second, that when he was riding on the cars with his wife afterwards, the conductor awoke him from sleep, and recognizing him, threatened to shoot him, and made him jump off the cars when they were running.

The proof on the first count was conflicting as to the cause and extent of the abuse of plaintiff; but the fact seems to be clear that when the plaintiff, who was a colored man, asked for a check for the baggage of his wife, whom he had seated, the baggage-master refused it, unless he would produce his passenger, saying that he was not allowed to give checks otherwise by the rules of the company. It was protested by the plaintiff, and another who was helping him with the baggage, that he was no porter, and the passenger was his wife, but all in vain. The check was not given to him. As the plaintiff turned off, he said it was a damned bad rule, if it was a rule; the baggage-master, who swore that the plaintiff called him a damned fool, and perhaps might so have understood him, jumped out of his car and followed the plaintiff alongside of the train towards the passenger car, and caught and commenced beating him. The conductor came up and took hold of the passenger's arm, and it seems, from the testimony of plaintiff and the mayor of LaGrange, where the trouble arose, took part in the rencounter, until the mayor arrested the parties. The plaintiff's wife, frightened, left the cars. This transpired in June. Afterwards, in October, the plaintiff and wife had been to Atlanta, and were returning to LaGrange, when the same conductor, waking up the passengers to see that they got off at the right stations, recognized plaintiff, cursed him and threatened to shoot him, and went to get his pistol for that purpose. The plaintiff, frightened, left his wife and jumped off the car when running, and was off on the return of the conductor, who, as one passenger testified, had a pistol on his return, and, as the plaintiff's wife swore,

said to her, it is well he has gone, or you would have been a widow. There is some conflict of evidence, but perhaps the foregoing summary gives the weight of it.

It also appeared that these agents were retained by the company, either in the same or other positions on their own road, or roads in connection with theirs.

On this evidence, under the charge of the court, the jury found a verdict for ten dollars; the plaintiff moved for a new trial, it was denied to him, and the errors assigned are, that the court charged the jury to the effect that unless the act of defendant's agents tended to facilitate or promote the business for which the agent was employed, the company was not responsible, and refused to charge to the effect that a carrier of passengers is bound to extraordinary diligence on the part of himself and agents, to protect their lives and persons, and that the principal is responsible for the acts of its agents within the range of their employment; and if the conduct of the agent within such range of employment be such as would give vindictive damages against the agent were he principal, then the jury would be authorized to give such damages against the railroad company; and also, that the court refused to charge that the duty of the company extended to the protection of passengers from the violence and insult of employees, not only while on the train, but on the arrival of the train at depots; that it extended to passengers who were buying tickets and checking baggage, and to the platform or area necessary to be used for those purposes.

So that three questions are made here: First, are railroad companies liable for the tortious acts of their servants, done in their business, and within the range of business entrusted to them? Secondly, in such cases, can the jury give exemplary, or punitive, or vindictive damages? Thirdly, are the companies bound for these tortious acts at the baggage car and on the area between that and the passenger car, necessary to be traversed by the passenger in the legitimate business of travel?

Gasway *vs.* The Atlanta and West Point Railroad Company.

1. In respect to the first question, it would seem that, outside of all other authority, our own Code settles it. Section 2961 declares that every person shall be liable for torts of his servant "in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." Section 5 declares that "person" includes "corporation" in the meaning "of all statutes, unless another meaning is apparent from the context." Section 1561 says that "persons are either natural or artificial," the latter, of course, being corporations. Section 1680 declares that "every corporation acts through its officers, and is responsible *for the acts* of such officers in the sphere of their appropriate duties."

Such is our own law; and all questions about negligent conduct, or wilful, voluntary conduct of agents of corporations, and the effect of such conduct upon the liability of the companies, seem to be set at rest by the Georgia Code.

There are, perhaps, two lines of authorities outside of our own state, upon this point, and we are not aware that our own court has positively decided it; 46 N. Y. Reports, 23, and 57 Maine, 202, contain the doctrine and apply the principle that corporations are liable for such tortious acts of their servants. In the latter case, one of the five judges dissented, but not on this point; and in the opinion of the majority and of the dissenting judge, numerous cases are cited to show that the corporation is liable for the torts of its agents to passengers for some damages—actual, if no worse. See, also, 14 Howard, 468 to 488; 21 Howard, 210; 10 Wisconsin, 388; 42 Pa., 365; 52 Pa., 512; 27 Md., 277.

2. The next question is, are railroad companies liable to passengers for exemplary or punitive damages, if the conduct of the agent be such as that he, if principal, would have been so liable? It was so decided in 56 New York, 295, and in the well considered case in 57 Maine, 202, though upon this point, in the latter case, the judge before alluded to, one of the five, dissented.

15

Our Code declares that "in every tort there may be aggravating circumstances, either in the act or intention, and, in that event, the jury may give additional damages either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff"— Code, §3066. Well, if liable for the wilful tort, we cannot see why the corporation should not be liable for such damages as result from the hurt to plaintiff's feelings from the act of the servant, as well as from the other hurt or injuries to him. Though the injury be voluntary, the Code declares that the principal is liable—Code, §2961—for the tort of the servant. The intention with which the servant acts is, therefore, to be considered, and that intention, as well as the act of the servant, may enter into the estimate of damages.

On the whole, we think that the true principles deducible from our own Code, and the general law, and the reason and spirit thereof, are these : first, if the conductor, or other officer, on a railroad train, in the exercise of a general power entrusted to him by the company, in respect to passengers, clothed with authority to exact pay from them, to receive their tickets, to receive, check and deliver their baggage, to supervise their conduct, to put them off the train if disorderly, to care for their reasonable comfort and protection ; if in the scope and range of such business the agent act in a manner to trespass upon the rights of passengers, to insult or maltreat them, to assault or wound or beat them, to frighten them so as to force them off the cars without justifiable excuse or reason, we think that the company is responsible for such tortious conduct of its agents and servants acting where it put them to use discretion and judgment, and within the business it entrusted especially to them ; and, secondly, we think that the measure of damages in such cases is such damages, actual and exemplary, or punitive, as would be given against a natural person had he committed such acts, or, as the case in 56 New York puts it, as would

have been given against the agent himself had he been sued as principal.

3, 4. Especially do we think that these principles should be applied when the conductors and baggage-masters, so acting towards passengers, are retained by the managing agents of the company, and thereby their conduct ratified by implication by the higher officials.

That this responsibility should extend to the area near the car necessary for the passenger to use in getting his baggage aboard and checked, and seating his wife or himself, and purchasing tickets and such other similar necessary accompaniments of travel, seems to us too clear for argument.

It is a duty that these carriers of passengers owe to the public to employ reliable and gentlemanly agents to conduct and manage their trains, and if they do not employ such, they should be made responsible for torts committed by those whom they have employed, and to whom they have given the power to violate their duty imposed by law safely to transport the passenger, and decently to treat him on his journey, so long as he properly demeans himself. If they discharge such servant, it would show disapproval of his conduct and may mitigate damages; if they retain or promote him, it may go to aggravate the wrong by ratifying the conduct of the wrong-doer. In view of these principles, and the charges and refusals to charge of the court thereon, we reverse the judgment and direct a new trial.

Judgment reversed.