THE CITY AND SUBURBAN RAILWAY OF SAVANNAH *vs.* BRAUSS.

1. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. In such a case the liability arises out of a breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty.

(*a.*) Wrongs, into what classes divided.

(*b.*) Private duties may arise from statute or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, gives a right of action.

(*c.*) This is not a suit to enforce a contract. Both the counts in the declaration set forth the duty imposed by the contract, and alleged its breach in this respect. They also alleged the facts that show the wrong from which the law will presume damage to flow. They averred no special damage in any form, and did not even give the terms of the contract specifically. Defendant pleaded not guilty,

a plea appropriate to an action *ex delicto*. The court did not, therefore, err in refusing a non-suit, on the ground that the action was one *ex contractu*, with no actual damages shown. .

2. The evidence for the plaintiff in an action against a street railway company showed as follows: Plaintiff and his wife entered a street car, and presented to the conductor tickets entitling them to ride to their point of destination. Plaintiff informed the conductor where he wished to go. Between the beginning and the end of the journey it was necessary for plaintiff to be transferred from one car to another, and he was transferred personally by the conductor of the first car, but was given no transfer ticket, nor did he know that one was necessary. Subsequently the conductor of the second car called for a transfer ticket or another payment of fare, and in default thereof ejected plaintiff and his wife, requiring them to get off the car in the mud a short distance from the street crossing, and in the presence of a number of people:

*Held*, that the case was one authorizing exemplary damages in a suit against the company.

(*a.*) The court below committed no error in the rule of damages laid down in his charge, nor in overruling objections to the plaintiff's testimony that his feelings were hurt. The law was correctly laid down, and there was no abuse of discretion in refusing to set aside the verdict and grant a new trial on the ground that the damages found were excessive.

(*b.*) The verdict, in addition to stated damages, having found attorney's fees without specifying the amount thereof, such portion of the verdict was illegal and without meaning, and may be disregarded.

May 1, 1883.

Actions. Contracts. Torts. Damages. Verdict. New Trial. Before Judge HARDEN. City Court of Savannah. November Term, 1882.

Brauss brought suit against the City and Suburban Railway of Savannah. His declaration contained two counts, the first of which alleged, in brief, as follows:

The defendant was a common carrier for hire, of passengers by street cars, in the city of Savannah. Plaintiff entered one of defendant's cars on Anderson street and became a passenger, and the defendant received the usual and customary fare, and became bound to convey plaintiff from Anderson street along Abercorn street to Liberty street,

and then to give to plaintiff a transfer ticket, by virtue of which another of defendant's cars would carry him from Liberty street to his place of residence. Defendant's agent, however, neglected and refused to give plaintiff a transfer ticket, and upon receiving his fare, informed him that such fare would entitle him to ride to his destination; and thereupon, at Liberty street, the conductor of the first car stopped the Liberty street car and personally transferred plaintiff thereto, placing him under the charge, care and protection of the conductor of the second car. But the latter subsequently demanded payment of fare or the production of a transfer ticket from plaintiff, and upon plaintiff's failure to comply with the demand, ejected him in the middle of the street, requiring him to get off in the mud; and the defendant broke its contract of carriage with him. The car was crowded with passengers, and plaintiff was mortified, disgraced and damaged by such expulsion. Plaintiff complained to the company of his treatment, and was willing to come to a settlement of his damages, but the latter refused to pay him anything, and thereby became liable to him for counsel fees for stubborn and litigious conduct.

The second count alleged substantially the same facts, and in addition alleged that no transfer ticket was necessary at the junction of Abercorn and Liberty streets.

The evidence for the plaintiff was, in brief, as follows: On Sunday afternoon, April 30, 1882, he and his wife boarded defendant's car at the junction of Anderson and Abercorn streets. He had purchased some street car tickets two days before, and had three of them left. He inquired of the conductor whether these tickets would be sufficient to carry him to his destination. The latter said that they would. He thereupon gave a ticket for himself and one for his wife, and informed the conductor that he desired to be transferred at Liberty street to the car which would carry him to his home. On reaching Liberty street, the conductor of the car in which plaintiff was, hailed the

conductor of the Liberty street car, and informed him that he had a transfer. The latter stopped, and plaintiff and his wife entered the Liberty street car. After it had started, the conductor called upon plaintiff for his fare. Plaintiff claimed that he had been transferred, but the conductor insisted that he must have either a ticket or a fare. Plaintiff had no money in his pocket at the time, and declined to pay. The conductor stopped the car in the middle of the block, and plaintiff and his wife were compelled to get out in the mud and walk home. The conductor's manner was "very short." There were about thirty people in the car, and he was much ashamed and wounded in his feelings when required to leave. On Monday morning following, he met the president of the company, and complained to him, telling him that he wanted satisfaction. The president responded that he would see the superintendent. Plaintiff said he wanted satisfaction. The president said he could give him none. If the necessary apologies and reprimands had been made, there would have been no suit. Plaintiff did not know of the requirement of a transfer ticket at the point where the transfer was made. At another junction on defendant's line, he had been transferred without a ticket, and transfers were so made at that place. On the succeeding day, a witness, to test the point, rode over the same track, and was transferred without a ticket.

The evidence for the defendant was, in brief, as follows: The Abercorn street car was what is known as a "bob-tailed" car, in which passengers deposit their fares in the box, and the driver or conductor is not allowed to receive them. The driver on this car sometimes acted as conductor on other cars, and would then receive fare. There was a junction on defendant's line, where passengers were personally transferred from one car to another, but the Abercorn and Liberty street cars did not ordinarily connect with each other, and transfer tickets were required, and notice to this effect was published. The conductors were

furnished with transfer tickets, and required to furnish them to passengers, upon application therefor. No direct application was made for transfer tickets by the plaintiff, nor did the conductor of the Abercorn street car remember the conversation detailed by plaintiff. The Liberty street car happened to be behind its usual time, and the two cars met. The conductor of the Liberty street car heard some one hail him, and on stopping, plaintiff and his wife boarded the car. It was his duty to require transfer tickets or money from passengers for the payment of fares. Plaintiff declined to furnish either, saying that he had been transferred from Abercorn street. The conductor could not, under the rules of the company, accept such a statement from a passenger in lieu of fare, and he was compelled to require plaintiff and his wife to leave the car. Plaintiff said he was near home and it made no difference. There was no ill-will toward plaintiff on the part of the conductor. He did not consider it his duty to put them off at a crossing, but stopped the car where he did because he was near the curve of a switch, and the rule was not to stop on a curve. The president denied any discourtesy to plaintiff, but said that he could not reprimand drivers without investigation, as frequent attempts were made to evade the payment of fare, and upon investigation thereof, he became satisfied that the conductors had acted properly.

The jury found the following verdict:

" We, the jury, find for the plaintiff the amount of his attorney's fees and costs of court, as established by the practice of this court, and further find for plaintiff in the sum of fifty dollars ($50) as damages."

Defendant moved for a new trial on the following grounds:

(1.) Because the presiding judge allowed the said plaintiff, against the objection of defendant, to testify as to his feelings when required to leave the Liberty street car of defendant, upon the failure and refusal of plaintiff to produce a ticket or pay his fare, it appearing from the evidence that any wound to plaintiff's feelings was caused by his own conduct in so refusing.

(2.) Because the judge, at the conclusion of plaintiff's evidence, and of the evidence produced on his behalf, refused, on motion of defendant, to non-suit said plaintiff and dismiss said case, it appearing from said evidence and the petition filed, that said complaint was for an alleged wrong done by defendant's violation of its contract; that said case as presented was a case arising on contract; that no actual pecuniary loss or damage was proved, and that the only damage claimed was exemplary damage for alleged injury to plaintiff's feelings.

(3.) Because the judge erroneously charged the jury as follows: " If the conductor of defendant's car said or did anything which misled the plaintiff into going upon the other car of defendant without a proper ticket or transfer, it was the company's fault; and while plaintiff was ejected· by the subsequent conductor, having the right to do so, the company would be responsible for the acts of both conductors; the company would be responsible, although the conductor of the second car acted right."

(4.) Because the general charge given to the jury was erroneous.

(5.) Because the judge erroneously charged the jury in the language of sections 3066 and 3067 of the Code of Georgia, and in connection therewith charged as follows: " That is to say, unless there be aggravating circumstances, you cannot give any except actual damages, but if there be aggravating circumstances you may give such damages as, in your opinion, would deter the wrong-doer from repeating the wrong, or would be sufficient to compensate the plaintiff for his wounded feelings; and in such case, that is, where there are aggravating circumstances, either in the act or the intention, it is not necessary to prove any special amount of damage; but whether damages should be allowed or not, and if allowed, how much, are exclusively matters for the determination of the jury."

(6.) Because the judge refused, though requested by the defendant in writing, to give the following charges to the jury.

(*a.*) " Exemplary damages can never be allowed in cases arising on contract."

(*b.*) "If the jury find that the plaintiff, Mr. Brauss, got on the Liberty street car of the defendant; that the conductor, in accordance with the rule and custom of the company, demanded his fare or a ticket; that plaintiff failed and refused to pay such fare or produce such ticket; that the rule of the company required the conductor to collect such fare or ticket or to eject the party so refusing from the car, and that the conductor did obey said rule and require the plaintiff to leave said car, then I charge you that the plaintiff is not entitled to recover any damage for such ejection from the said car, in obedience to said rule of said company."

(*c.*) "While a corporation may be liable for the torts of its agents in the prosecution and within the scope of its business, it cannot be made liable for such torts, unless the agent himself would be liable; that is, the defendant in this case cannot be made liable for the tortious act of its conductors, Nix and Finney, or either of them, unless they themselves would be individually liable."

(*d.*) "A railroad corporation, when sued for a tort, is not liable to exemplary or vindictive damages unless the officer or agent of the company by or through whom the tort was committed would, if sued, be personally liable to such exemplary or vindictive damages. If, therefore, the jury believe, under the evidence, that Finney, the conductor or agent of the defendant, would not be personally liable, if sued for exemplary or vindictive damages, then the defendant would not be liable for such damages."

(7.) Because the judge erred in giving to the jury, at the request of the plaintiff, the following charges in behalf of said plaintiff:

(*a.*) " There is a difference between vindictive and compensatory damages. Vindictive are intended as a punishment upon the wrong-doer, and are inflicted upon the wrong-doer for the purpose of correction or example, to

deter the same party or others from the. perpetration of a similar wrong in the future. Such vindictive damages are added to the actual compensatory damages. But compensatory damages are allowed to the complaining party as his right, and are intended to make him whole, irrespective of the motive of the wrong-doer, or even of the good faith of the wrong-doer. Even good motives on the part of the wrong-doer, and an honest belief that he is doing what is right and lawful, cannot lessen the damages which the law allows as compensatory, though such honest belief and good motives would generally prevent the imposition of vindictive damages in addition to compensatory damages."

(b.) "If the jury find from the evidence that the feelings of plaintiff were wrongfully wounded, and that there were aggravating circumstances in the act or intention, such wounded feelings can be compensated, if the jury find from the evidence in favor of Brauss, even though neither of the conductors bore any malice to Brauss or intended to do any wrong, and only acted in the performance of what they believed to be their duty; now mark this, gentlemen: if they performed what they thought to be their duty in an improper and aggravating manner."

(c.) "The plaintiff, Brauss, in order to recover compensatory damages for wounded feelings, need not prove any amount or swear to any amount, though he must prove that he is entitled to that class of damages. The enlightened conscience of the jury is the guide the law prescribes in such cases. The jury can give such damages as the circumstances of each case require, if such circumstances, in their opinion, require any damages at all."

(8.) Because the verdict is contrary to the law and the evidence.

(9.) Because the jury undertook to find attorneys' fees, though instructed by the court that they could not find attorneys' fees unless they were proved to be due by the

evidence, and no evidence whatever having been introduced on the subject of attorneys' fees.

(10.) Because said verdict is uncertain and illegal, and no legal judgment can be entered up thereon.

The motion was overruled, and defendant excepted.

LESTER & RAVENEL; GEORGE A. MERCER, for plaintiff in error.

R. R. RICHARDS, for defendant.

HALL, Justice.

The errors alleged to have been committed in the progress of this trial may be conveniently considered under two general heads :

(1st.) Is this an action for a tort, or an action upon a contract? Or is there a joinder of the two in different counts of the declaration, or a commingling of both in any of the separate counts ?

(2d.) If these defects do not exist, did the court, in its charge, lay down the proper rules for measuring the damages, under the testimony ; and was the finding of the jury so excessive as to excite suspicion that it was the result of such gross misapprehension or undue bias upon their part as to authorize the judge, in the exercise of a sound discretion, to set it aside and order a new trial ?

1. Wrongs are divided into criminal and civil, and the latter are subdivided into the two classes of wrongs *ex contractu* and wrongs *ex delicto ;* the former being such as arise out of the violation of private contracts; the latter, commonly called torts, such as spring from infractions of the great social obligation, by which each member of the state is bound to do hurt to no man. Moak's Underhill on Torts, pp. 3 and 4.

In actions upon cases where the contract has been induced, for instance, by the fraud of the defendant, the party injured may either waive the tort and sue upon the contract, or he may proceed for the wrong. (Code, §§2955,

2956); and in that event, the contract will not be counted on, though it will be necessarily shown, in order to make it appear how the wrong was injurious. The tort, in such a case, is connected with the contract only as it enabled the tort feasors to bring the party wronged into it Cooley on Torts, p. 90, and cases cited in notes 1 and 2 there. Code, §2951. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract. 1 Addison on Torts, §27. And in such a case, "the liability arises out of a breach of duty incident to, and created by, the contract; but it is only dependent upon the contract to the extent necessary to raise the duty. The tort consists in the breach of duty." *Ib.*, note 1. Private duties may arise from statute, or flow from relations created by contract, expressed or implied. The violation of any such specific duty, accompanied with damage, gives a right of action. Code, §2954.

Tested by these principles, this is certainly not a suit to enforce a contract. Both the counts in the declaration set forth the duty imposed by the contract, and allege its breach in this respect; they also allege the facts that show the wrong from which the law will presume damages to flow. They aver no special damage in any form, and do not even give the terms of the contract specifically.

To this action, the defendant pleaded not guilty, which would not be an appropriate answer to an action *ex contractu*, but is the proper answer to one *ex delicto*. There was no demurrer to this declaration; but the defendant waited until the plaintiff had closed his evidence, and then moved to non-suit and dismiss said action, upon the ground that it appeared, from the evidence and petition filed, that the complaint was for an alleged wrong done by defendant's violation of its contract; that the case, as presented, was a case arising on contract, and that no actual pecuniary loss or damage was proved, and that the only damage claimed was exemplary damage for alleged injury to plaintiff's feelings; which motion was overruled.

Waiving, for the present, the discussion of the character of the damages which the plaintiff was entitled, under his pleading, to prove and to recover, we think, as we have before shown, that this is an action *ex delicto*, founded upon the failure of the defendant to perform a duty imposed by its contract, and that the plaintiff was entitled to recover damages in consequence of this breach of duty, and that the motion was properly overruled.

2. We are next to consider what was the rule for estimating the damage in this case, and whether, for a breach of such a duty, nothing more than the actual pecuniary loss can be recovered, or whether the plaintiff is entitled to have compensation for his wounded feelings, in consequence of the indignity put upon him. The determination of these questions will dispose of most of the questions made in this case. Let it be borne in mind that the plaintiff had a right, according to the tickets which he presented, to be transported on the defendant's lines of road, from the point at which he entered its cars to his place of destination, and that it was the duty of the defendant to transfer him from one of its lines to another as often as it was necessary to reach the end of his ride; that he was actually transferred by the conductor of the Abercorn to the Liberty street car. It is true he had no transfer ticket, nor did he know that it was necessary for him to apply to the conductor for one; he had, however, stated to the conductor of the first car he entered, where he wished to go. The conductor ought to have known if it was necessary to have this transfer ticket, to reach his destination, and should have furnished it. He made the transfer, however, without doing this, and after this conversation, the plaintiff had a right to act upon the assumption that all had been done that was necessary to secure his passage; and seeing that such was his impression, the conductor should have furnished the transfer ticket without any further request. It would be going very far to require a passenger to specify to the agents of the company what means and

appliances were necessary to the accomplishment of the end he had in view; it is the duty of these agents to supply the tickets necessary, under such circumstances. The plaintiff was not in fault, and he should not be made to suffer for the negligence of the defendant's agents. He was properly on the cars with his wife, and had a right to be there until he reached his destination. The demand made on him for his fare resulted from the wrongful neglect of one of defendant's conductors, and it can make no difference, so far as concerns the duty the company owed him, that it was violated by another conductor, who was unapprised of the actual facts in the case. It was the duty of the first conductor to have communicated to him this information. But it is not clear that he was without fault, for there is sufficient evidence to show that the plaintiff was transferred to his car, and he was so informed by the conductor when the transfer was made. The jury had a right to presume that he had this information, or might have had it, if he had paid proper attention to what was passing, and that it was his duty to take notice of the fact. His failure in this respect put the company in the wrong; and in putting the plaintiff off the car, they are chargeable with a breach of duty which their contract with him imposed. The circumstances under which he was put off, and the place where he and his wife were landed, were well calculated to wound the feelings and mortify the pride of any man of ordinary sensibility. In every tort there may be aggravating circumstances, either in the act or the intention, and in that event, the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff. Code, §3066.

This provision of our Code is as applicable to the conductors of street cars as to the conductors of railways. It is comprehensive in its terms, and embraces every tort of every character and description, committed by every kind of wrong-doer, and visits upon the offender exemplary

v 70÷25

damages, or damages to compensate for wounded feelings. Surely, it cannot be seriously insisted that there was nothing calculated to wound feelings in the plaintiff and his wife being ordered from the car, in the presence of a number of strangers, and landed in the mud in the middle of the street, when there was a good crossing in close proximity ! That there was nothing in this indignity, to characterize it as mildly as possible, that was not well calculated to excite in the beholders thoughts of a very prejudicial and derogatory character to the persons thus dealt with ! Is there no aggravation in this act, apart from any intention in the wrong-doer, to excite such unpleasant reflections, and thus inflict a wound upon the feelings, entitling the party to compensation in damages ? Is there anything in such conduct on the part of a conductor of a public street railway car to shield him from exemplary damages, in order to prevent the repetition of such offences ? Should not a salutary lesson be taught, through this verdict, to impress the necessity of caution upon these persons dealing so largely with the public ? These questions have been answered affirmatively by this court in the well considered case of *Gasway vs. The Atlanta and West Point R. R.*, 58 *Ga.*, 216. The court below committed no error in the rule of damages laid down in his charge, nor in overruling objections to the plaintiff's testimony that his feelings were hurt. The law applicable to the circumstances entitling plaintiff to this action was correctly laid down.

There was no abuse of discretion in refusing to set aside the verdict and grant a new trial, upon the ground that the damages found were excessive. To authorize such interference as was invoked, the damages should have been so excessive as to lead the court to infer that they were the result of bias or prejudice upon the part of the jury. Code, §§3067, 2947.

The portion of the verdict that found attorneys' fees, without specifying the amount, was illegal and without meaning, and may, and doubtless will, be disregarded by

the court below, in rendering its judgment thereon, (Code, §§3491, 3493; *Steed vs. Cruise et al.*, February term, 1883, not yet published,) if, indeed, this has not been already done.

Authorities cited for plaintiff in error: Code, §§2951, 2201, 2203; 15 Am. R., 119; 8 *Ib.*, 311; 2 *Ib.*, 39; 53 N. Y., 25; 58 *Ga.*, 216; Pierce, R. R. Law, 491, 492; Code of 1873, §2082; Wait's Actions and Def., 88 (8), 89; Code, §§3034, 3066, 3067, 2951, (2 and 3), 2953, 2943; 30 *Ga.*, 246, 247; 48 *Ib.*, 565; Code, §§3073, 3065, 3070; 56 N. Y., 295; 54 Wis., 234.

For defendant in error: 11 *Ga.*, 137, 140, 141; 4 Am. Dec., 475 (a); 1 Sutherland Dam., 158; 53 N. Y., 25; 13 Rep., 542; 9 Am. R., 434, 435; Sutherland Dam., 749, 750; 2 Am. R., 39, 42, *et seq.*; 8 *Ib.*, 305, 310.

Judgment affirmed.