The Western & Atlantic Railroad *vs.* Turner.

## The Western & Atlantic Railroad *vs.* Turner.

[Jackson, Chief Justice, being disqualified, Judge Branham, of the Rome circuit, was appointed to preside in his stead.]

1. Railroad companies are liable for torts committed by their servants in the prosecution and within the scope of their business, whether the same be by negligence or voluntary.

(a.) Where one was lawfully in the cab of a freight train of a railroad, treating for passage, as had frequently been done, and was still being done at the time of the trial by other persons on the same train, as to an injury inflicted upon him by the conductor, he stands within the reason and spirit of the authorities in reference to like injuries done to passengers.

·2. Conductors of through freight trains may, if required by the rules of the company or the exigencies of the case, refuse to carry passengers in their cabs or on their trains. But such refusal should be made known in a civil and respectful manner to a person applying for passage thereon, and reasonable opportunity should be allowed for such person to quit the cab of his own motion. If he should refuse to do so, the conductor could use such reasonable force as was necessary to eject him therefrom. The conductor's acts in relation to these matters, under the facts of this case, were done in the prosecution and within the scope of his business, and for his use of insulting and obscene language in refusing passage to the applicant, and his violence in striking and injuring such person, the company was liable, even though it was voluntarily done.

·(a.) Section 2203 of the Code must be construed with section 2961, so as to harmonize the two and allow both to remain of force, in the cases to which they apply.

3. Where there is no evidence of aggravating circumstances in the act or intention, or of gross negligence, §3066 of the Code should not be given in charge, and the *onus* is on the plaintiff to prove aggravating circumstances, in order to entitle him to have this section given in charge. But where there was proof of brutal and inhuman conduct on the part of the agent of a railroad company and of his employment by the company several days after the transaction, that section was properly given in charge.

((a.) The prompt discharge of such an agent by the company. upon being advised of his conduct. and the repudiation o' his act would exclude altogether the right of the plaintiff to recover additiona·

126, 244; 4 Pet., 349; 16 How., 610, 58 *Ga.*, 208: 12 Abb. Pr. (N S.). 172; 5 Nev. 41t ·422 423

This question has recently been considered. and the authorities fully reviewed by the Supreme Court of Indiana, in an unpublished case, which cannot be cited by name, as it is not before the reporter. (Rep.)

damages "to deter the wrong doer from repeating the trespass," but would not prevent the jury from giving additional damages "as compensation for the wounded feeling of the plaintiff."

April 25, 1884.

Railroads. Damages. Negligence. Master and Servant. Before Judge FAIN. Whitfield Superior Court. October Term, 1883.

Reported in the decision.

R. J. McCAMY, for plaintiff in error.

S. P. MADDOX; T. R. JONES; W. K. MOORE, for defendant.

BRANHAM, Judge.

The plaintiff being in Dalton, and desiring to return to his home in Tilton, nine miles south of Dalton, and there being no passenger train there at the time, entered a cab, having the usual passenger accommodations, attached to a through freight train, then standing near the depot, for the purpose of treating with the conductor for passage to Beardsley's, a water station one mile above Tilton, at which point, he was informed by the engineer, the train would stop that night. Other persons often went down "on this schedule," and got off at this point. He had thirty cents to pay his fare. The fare, without a ticket, to Tilton, when paid on the train, was forty cents. The conductor, in reply to a polite inquiry of the plaintiff, said he was a little behind time, and that he did not expect to stop at Tilton, and that "he did not intend to be bothered with any d——d man that night." The plaintiff said he did not intend to bother him; that he had been unable to get a ticket; that he had money to pay his fare. and came in to see whether he would carry him or not; that the engineer told him he would stop at Beardsley's, and he could walk from there to Tilton. The conductor then said, "he did

not propose to be bothered with any G——d d——d man that night." Two of the train hands came in at this time, and one of them told the conductor he knew the plaintiff; that he was a gentleman; requested him to carry him, and authorized the conductor to take out of money of his own, then in the conductor's hands, any additional sum that might be needed for his fare. The conductor replied, "I don't propose to be bothered in here to-night with any G——d d——d son of a b—tch." The plaintiff replied, "I am no G——d d——d son of b—tch; I am as much of a gentleman as you are." Thereupon the conductor struck him three blows with his lantern, breaking the glass globe, cutting his face and head badly, and cutting an inch gash through his lip to his teeth, and knocking him out of the cab door, across the railroad track, from which he sustained additional injuries. The wound in the lip has never healed.

The jury, on the trial of the case, found $700.00 damages for the plaintiff.

A non-suit in this case was reversed by this court at the February term, 1883.[*]

1, 2. Railroad companies are liable for torts committed by their servants in the prosecution and within the scope of their business, whether the same be by negligence or voluntary. Code, §§ 5, 2961; *Gasway vs. The A. & W. P. R. R. Co.*, 58 *Ga.*, 216; *Peeples, g'dn, vs. The B. & A. R. R. Co.*, 60 *Id.*, 281; *The Georgia R. R. Co. vs. Newsome, Ibid.*, 494.

The two cases first cited were actions for torts to persons who were passengers. The plaintiff in the case last named was not a passenger.

In this case, the plaintiff was lawfully in the cab, treating for passage, as had been frequently done, and as was still being done at the time of the trial by other persons on the same train; and it therefore stands really within

---

[*]69 *Ga.*, 827.

the spirit and reason of the authorities first above cited, as well as in Newsome's case.

The conductor had the right to refuse the plaintiff passage in the cab. Conductors of through freight trains, for sufficient reasons, may, if required by the rules of the company or the exigencies of the case, refuse to carry passengers in their cabs or on their trains. Such refusal should be made known in a civil and respectful manner to persons applying for passage thereon. In this case, the refusal of the conductor to carry the plaintiff, instead of being expressed in a polite manner, was made known to the plaintiff, without the slightest provocation on his part, in profane, vulgar and abusive terms.

It is true, as claimed by counsel for the company, that it was the duty of the plaintiff to have left the cab, when refused passage, within a reasonable time thereafter. We cannot agree with counsel, however, that the conductor ceased to represent the company and to act within the line of his duty, if a sufficient time was given plaintiff to leave the car after being so refused. In such a case, the conductor had the right to eject him from the cab, and to use such reasonable force as was necessary for this purpose, and there is no error in the charge of the court in this respect, as excepted to in the third and fourth grounds of the motion. The duty of the conductor was two-fold: First, if he refused the plaintiff passage, to do so in a polite manner, and give him a reasonable opportunity to quit the cab of his own motion. Secondly, if, after having done this, the plaintiff still refused to leave the cab, then to use such reasonable force as was necessary to eject him therefrom. Whatever the conductor did in relation to either of these matters was, under the facts of this case, clearly done in the prosecution and within the scope of his business, and the company was liable for his conduct, even though it was voluntary. He had no right to insult the plaintiff by the use of vulgar and profane language and abusive epithets, and then, without provocation, to beat him over

the head, in his face and mouth, and knock him out of his cab door with his lantern.

The Code, §2203, must be construed with section 2961, and so construed as to harmonize the two and allow both to remain of force, in the cases to which they apply.

3. The court gave in charge Code, §3066, and explained its application to the case. This is assigned as error, upon the ground that this is not a case for punitive damages. We think there was no error in this part of the charge. Where there is no evidence of aggravating circumstances in the act or intention, or of gross negligence, this section of the Code ought not to be given in charge. *Augusta Factory vs. Barnes*, this term, also, *Smith vs. Overby*, 30 *Ga*, 241. It would have been error to have refused it in this case. This conductor's conduct was highly censurable. He was in the employ of the company several days after the occurrence, and there is no evidence in the record that he has ever been discharged, The *onus* is on the plaintiff to prove aggravating circumstances, in order to entitle him to have this section given in charge. 23 *Ga.*, 145; *Savannah, Fla. & W. R. R. Co. vs. Stewart*, 71 *Ga.*, 427.

It was done in this case by proof of brutal and inhuman conduct on the part of the agent, and by proof of his employment by the company several days after the transaction. The prompt discharge of such an agent by the company, upon being advised of his conduct, and the repudiation of his act, would exclude altogether, in such cases as this, the right of the plaintiff to recover additional damages, as provided by the section, " to deter the wrong doer from repeating the trespass;" but it would not prevent the jury from giving additional damages, " as compensation for the wounded feelings of the plaintiff." See 51 *Ga.*, 646; 59 *Id.*, 426; 60 *Id.*, 492, and 58 *Id.*, 216 (4).

In all cases, such damages must be regulated by the enlightened conscience of an impartial jury. They must be just, and they must not be inadequate or excessive.

The case of Fay *vs.* Parker, 53 N. H., 342, reported in

16 Amer. Repts., is an able, exhaustive and interesting case on this subject, adverse, however, to the allowance of exemplary or punitive damages, but embracing within its scope damages for wounded feelings, and every element of damage compensatory in its nature. The conflicting authorities therein cited are fortunately put at rest by the provisions of our Code.

Let the judgment of the court below be affirmed.